IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STANDARD PROCESS, INC.,

                      Plaintiff,

v.                                                     OPINION and ORDER

THE ANTITREND LLC, DANIEL EARLE,                       19-cv-99-jdp
and JOHN DOES 1–100,

                      Defendants.

---

Plaintiff Standard Process, Inc. manufactures dietary supplements and sells them exclusively through authorized resellers. It filed this lawsuit for trademark infringement against The Antitrend, LLC, Daniel Earle (Antitrend's owner), and 100 John Doe defendants.[1] Standard Process alleges that defendants are selling its products without authorization through Amazon.com, thereby undermining its quality controls, confusing consumers, and harming its business. Defendants Earle and Antitrend move to dismiss the suit, contending that they lack sufficient contacts with Wisconsin to permit the exercise of personal jurisdiction, and also that Standard Process is subject to a binding arbitration agreement. Dkt. 7. In the alternative, they ask the court to transfer the case to the United States District Court for the District of Massachusetts, where related litigation filed by the named defendants is pending.

The court will deny all three parts of the motion. Standard Process has made a prima facie showing that defendants purposefully directed their conduct at Wisconsin and that its

---

[1] Standard Process says that it believes that the unknown John Doe defendants are "equally responsible for the events and occurrences" in the complaint or are "otherwise interested in the outcome of the dispute." Dkt. 1, ¶ 4. It doesn't explain what these unnamed defendants are alleged to have done or how Standard Process knows that they exist.

injuries are related to that conduct, so defendants are subject to specific personal jurisdiction in Wisconsin. And defendants fail to demonstrate that Standard Process is subject to an arbitration agreement or that transfer to Massachusetts is warranted.

BACKGROUND

The court draws the following facts from the allegations in Standard Process's complaint, Dkt. 1, as well as the parties' evidentiary submissions, Dkt. 9 and Dkt. 12, which the court may consider in deciding a motion to dismiss on jurisdictional grounds. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Standard Process is a Wisconsin corporation with a principal place of business in Wisconsin. It makes nutritional supplements, which it sells exclusively through a network of authorized resellers.

Antitrend is a limited liability company operated by Daniel Earle, who lives in Massachusetts. (The parties don't distinguish between the two defendants, so the court will refer to them collectively as "Antitrend" unless otherwise noted.) Antitrend runs a storefront on Amazon.com called "A Reselling Company." Dkt. 1, ¶ 3. Antitrend sends its inventory to an Amazon center in New Jersey, from which Amazon provides order-fulfillment services. Antitrend exercises no control over the locations of the customers who purchase products from its Amazon storefront.

In May of 2018, Antitrend began selling nutritional supplements manufactured by Standard Process, even though Antitrend isn't an authorized reseller. It did so by buying Standard Process products and then listing them for resale on its storefront. On May 31, 2018, counsel for Standard Process sent Antitrend a letter demanding that it stop selling Standard

Process products. Antitrend didn't respond to the letter and continued listing Standard Process products on its storefront. On June 14, 2018, counsel for Standard Process sent Antitrend another letter, threatening to sue it in Wisconsin and enclosing a draft complaint.

Up to that point, no customers based in Wisconsin had ordered a Standard Process product from Antitrend's Amazon storefront. But that soon changed. Between June 25, 2018 and February 6, 2019, 11 Amazon customers from Wisconsin purchased a total of 13 Standard Process products from Antitrend. Amazon delivered those products to Wisconsin.

On November 8 and December 3, 2018, counsel for Standard Process again contacted Antitrend to demand that it cease selling Standard Process products. Antitrend ignored these demands. Standard Process filed this suit on February 6, 2019, accusing Antitrend of trademark infringement, unfair competition, deceptive trade practices, and tortious interference with contract and business relations. The court has subject matter jurisdiction over the federal-law claims under 28 U.S.C. § 1331. It may assert supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

ANALYSIS

Antitrend moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or, alternatively, under Rule 12(b)(3) for improper venue because of an arbitration agreement that it says bars Standard Process from seeking relief in court. In the alternative, Antitrend asks the court to transfer the case to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404.

## A. Personal jurisdiction

Federal courts may exercise personal jurisdiction where a party would be amenable to suit under (1) the laws of the state where the federal court sits; and (2) where jurisdiction is consistent with the requirements of due process. *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). If a defendant has such systematic and continuous contact with the forum that it might be regarded as at home there, the court can exercise general jurisdiction, meaning that the defendant would be subject to personal jurisdiction in that court for any claim. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). More limited contacts might support specific jurisdiction, meaning that a defendant would be subject to personal jurisdiction for claims related to its forum contacts. *Id.* Here, both parties focus on specific jurisdiction, so the court will limit its analysis to whether the exercise of specific jurisdiction is authorized under Wisconsin law and the Constitution.

In deciding a motion to dismiss for lack of personal jurisdiction, the court accepts the plaintiff's well-pleaded factual allegations as true and resolves factual disputes in the plaintiff's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). At this stage, Standard Process need only make a prima facie showing of personal jurisdiction. *Id.* To do so in this case, it must demonstrate both that Antitrend falls within Wisconsin's long-arm statute, Wis. Stat. § 801.05, and that exercise of jurisdiction over Antitrend is consistent with due process.

### 1. Wisconsin's long-arm statute

There is little discussion of Wisconsin's long-arm statute, Wis. Stat. § 801.05, in the parties' briefs. Standard Process asserts that § 801.05 is satisfied in this case, but it doesn't identify which specific subsection of the statute applies. Antitrend says nothing about

4

§ 801.05, which suggests that there is no dispute that Standard Process meets the long-arm requirements. The court is satisfied that jurisdiction is proper under § 801.05(4)(b), which applies when a plaintiff suffers an injury within Wisconsin arising out of a defendant's out-of-state act or omission if "products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

Standard Process alleges that Antitrend processed its products by selling them on Amazon without authorization. Under the long-arm statute, "process" includes "purchasing and selling goods in the ordinary course of trade in a distribution system." *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 11, 245 Wis. 2d 396, 410–11, 629 N.W.2d 662, 668 (citation omitted). The Amazon sales caused injury to Standard Process in Wisconsin: when "a trademark is impaired, the injury is generally felt where the owner of the trademark is located." *Marvel Mfg. Co. v. Koba Internet Sales, LLC*, No. 11-cv-961, 2012 WL 2466772, at *4 (E.D. Wis. June 27, 2012) (citing *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd.*, 34 F.3d 410, 411 (7th Cir. 1994)). And Standard Process alleges that Antitrend sold unauthorized Standard Process products to Wisconsin consumers, so the court can reasonably infer that those products were consumed in Wisconsin in the ordinary course of trade. *See, e.g.*, *LG Elecs., Inc. v. Quanta Computer Inc.*, 520 F. Supp. 2d 1061, 1069 (W.D. Wis. 2007). Compliance with a state's long-arm statute creates a presumption that the exercise of personal jurisdiction complies with the requirements of due process. *Felland*, 682 F.3d at 678.

The court turns now to the due process analysis.

2. **Due process requirements**

In assessing whether an exercise of jurisdiction comports with due process, the focus is on foreseeability—whether the defendant should reasonably anticipate being sued in the forum

state because of its activities there. *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). The Court of Appeals for the Seventh Circuit has distilled the constitutional test for specific jurisdiction into a three-prong inquiry: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at that state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673.

### a. Conduct purposefully directed at Wisconsin

The standard for determining whether a defendant has purposefully availed itself of or purposefully directed its activities at a forum depends on the type of claim at issue. *Id.* at 674. In trademark cases, the court of appeals has applied the test originally articulated in *Calder v. Jones*, 465 U.S. 783 (1984). *See, e.g.*, *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445–47 (7th Cir. 2010). Under that test, a defendant purposefully directs its activities at the forum state if that defendant engaged in (1) intentional and allegedly tortious conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. *Id.* at 445 (interpreting *Calder*, 465 U.S. at 789–90).

Standard Process easily makes a prima facie showing under the first and third prongs. The first prong is satisfied because Standard Process alleges that Antitrend engaged in intentional and tortious conduct by selling items through Amazon that infringe Standard Process's trademarks. Antitrend asserts throughout its briefs that its conduct wasn't tortious because its sales of Standard Process products were perfectly legal, but that goes to the merits of Standard Process's claims, not to personal jurisdiction. For purposes of the jurisdictional

analysis, it is enough that Antitrend's conduct was intentional and that it is *alleged to have been tortious*. *See Tamburo v. Dworkin*, 601 F.3d 693, 704 (7th Cir. 2010).

The third prong of the analysis is likewise satisfied. It is reasonable to infer that Antitrend knew enough about Standard Process to determine that it wanted to list Standard Process products on its Amazon storefront. It is also reasonable to infer that Antitrend knew that doing so would affect Standard Process at its place of business in Wisconsin. Even if Antitrend wasn't initially aware that Standard Process was based in Wisconsin, it would have received notice from Standard Process's cease-and-desist letters on May 31, June 14, November 8, and December 3, 2018. So Standard Process has made a prima facie showing that Antitrend knew that the effects of its conduct would be felt by Standard Process in Wisconsin.

The closer question is whether Standard Process has made the requisite showing under the second prong—that is, whether Antitrend "expressly aimed" its conduct at Wisconsin. Antitrend contends that it had no contacts with Wisconsin apart from the 11 Wisconsin-based customers who ordered 13 Standard Process products through its Amazon storefront. These orders aren't sufficient to show that Antitrend expressly aimed its conduct at Wisconsin, it says, because (1) they were initiated by the Wisconsin-based Amazon users and fulfilled by Amazon, without any involvement from Antitrend; and (2) they aren't "substantial" contacts.

Antitrend's first contention—that its sales to Wisconsin were the product of unilateral actions by its customers over which it exercised no control—ignores the law in this circuit holding that maintenance of an interactive website that enables shipment of infringing products to the forum state can sometimes suffice to show that a defendant purposefully directed its conduct at that state. *E.g.*, *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010) (court had specific jurisdiction over defendant that operated commercial, interactive

7

websites permitting unauthorized sale of cigarettes to customers in Illinois and 48 other states). Like the defendant in *Hemi*, Antitrend set up an online storefront accessible to customers in states that included Wisconsin, held itself out as open to do business in states that included Wisconsin, and enabled shipment of products to states that included Wisconsin. *See id.* at 758 (concluding that such contacts were properly characterized as "Hemi reaching out to residents of Illinois, and not the residents reaching back"); *see also uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 428–29 (7th Cir. 2010). Antitrend suggests that its use of Amazon somehow insulates it from personal jurisdiction, but it cites no authority for that proposition. This court has previously held that using intermediaries like Amazon to sell and ship products has no bearing on the minimum-contacts analysis. *See Standard Process, Inc. v. KDealz Co.*, No 17-cv-909-JDP, 2018 WL 3059673, at *3 (W.D. Wis. June 20, 2018) ("The fact that [defendant] conducts that business through Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx would."); *see also Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (court had personal jurisdiction over out-of-state defendant who offered infringing products on storefront on Aliexpress.com).

Antitrend's second contention—that its contacts with Wisconsin aren't sufficiently substantial to permit specific jurisdiction—is also inconsistent with circuit law. Antitrend says that its only contacts with Wisconsin were the handful of sales it made to Wisconsin. It relies on *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), for the proposition that making a few sales through an interactive website can't be sufficient to support specific jurisdiction because holding otherwise would create "de facto universal jurisdiction" by allowing a plaintiff to sue "in literally any state where the defendant shipped at least one item." *Id.* at 801. But the *Advanced Tactical* court was merely noting that it

was unlikely that a "few sales alone, *without some evidence linking them to the allegedly tortious activity*, would make jurisdiction proper." *Id.* (emphasis added). Standard Process is not basing its jurisdictional argument only on the few Wisconsin sales, but on the combination of those sales with Antitrend's actions expressly aimed at Standard Process in Wisconsin.

Standard Process alleges that Antitrend deliberately set out to trade on the reputation and goodwill of a Wisconsin entity by inducing customers who might otherwise have bought Standard Process products from authorized resellers to buy them from Antitrend instead. Antitrend had good reason to know that its unauthorized reselling would injure Standard Process in Wisconsin, especially after it received cease-and-desist letters confirming as much. Despite this knowledge, Antitrend proceeded to make sales to 11 Wisconsin customers. The few Wisconsin sales would not be sufficient minimum contacts on their own. But the knowledge of injury to a Wisconsin plaintiff coupled with some sales to Wisconsin bring this case within *Calder*'s scope. The combination also distinguishes this case from recent trademark cases in which the court of appeals has reiterated that mere knowledge of an injury in the forum state isn't enough to show purposeful direction. *See, e.g.*, *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 521–22 (7th Cir. 2018) (no jurisdiction where defendant was alleged to have deliberately infringed plaintiff's trademark but otherwise had no contacts with the forum state); *Mobile Anesthesiologists*, 623 F.3d at 445–47 (defendant's receipt of cease-and-desist letter putting it on notice of plaintiff's injury didn't confer jurisdiction when defendant had no contacts with the forum state).

Standard Process has made a showing that Antitrend expressly aimed tortious conduct at Wisconsin, among other states, with knowledge that its conduct would injure Standard

Process in Wisconsin. So the court is satisfied that Antitrend purposefully directed its activities at Wisconsin as required by due process.

### b. Injury "arises out of" the defendant's contacts with the forum state

The next question is whether Standard Process's claims arise out of or relate to Antitrend's contacts with Wisconsin. Antitrend contends that they do not because Standard Process's claims lack merit: its resale of Standard Process products is perfectly legal, it says, so its sales to Wisconsin customers "did not give rise to any trademark-related claims." Dkt. 8, at 12. Antitrend again invokes *Advanced Tactical*, in which the Seventh Circuit held that there was no specific jurisdiction when the plaintiff provided "no evidence that [its] sales [to the forum state] had any connection with th[e] litigation." 751 F.3d at 801.

Once again, Antitrend's reliance on *Advanced Tactical* is misplaced. *Advanced Tactical* was a trademark suit between competing makers of pepper-spray projectiles used by law enforcement. The claims arose when the defendant posted on its website and sent through its email list an announcement that it had recently acquired manufacturing equipment formerly used by the plaintiff. The plaintiff sued the defendant in Indiana, where the defendant had sold numerous of its projectiles through its interactive website. In holding that the claims didn't arise out of or relate to the defendant's sales to Indiana, the Seventh Circuit noted that plaintiff had adduced no evidence that any Indiana purchasers saw defendant's allegedly infringing message before ordering the product or that any Indiana purchaser believed that defendant was selling plaintiff's product. The Indiana purchasers were separate from the tortious communications.

Here, by contrast, Antitrend's conduct and Standard Process's claims are directly connected. Standard Process alleges that Antitrend infringed its trademark by listing and selling

Standard Process products on Amazon without authorization. Antitrend doesn't dispute that its Wisconsin customers ordered Standard Process products through its Amazon storefront. Standard Process's claims arise out of or relate to Antitrend's forum contacts. It may turn out to be the case that Antitrend's conduct wasn't illegal, but that's a question on the merits for summary judgment or trial. The question for jurisdictional purposes is whether Standard process has made a prima facie showing that the alleged infringement arose out of or relates to Antitrend's contacts with Wisconsin. Standard Process has made that showing here.

### c. Traditional notions of fair play and substantial justice

The last question is whether the exercise of personal jurisdiction over the out-of-state defendant would offend traditional notions of fair play and substantial justice. The burden is on the defendant to make a compelling case that exercising jurisdiction over it would be unreasonable. *Felland*, 682 F.3d at 677. Courts typically consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Antitrend contends that each of these factors weighs against specific jurisdiction in Wisconsin. It says that litigating in this forum will impose a substantial burden, and that Wisconsin has minimal interest in adjudicating this case because Antitrend's Wisconsin customers were happy with their purchases. But defendants always face burdens when litigating in out-of-state forums, and "there is no suggestion that [Antitrend's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against

11

nonresidents." *Felland*, 682 F.3d at 677. Standard Process is based in Wisconsin, it alleges that it has suffered injuries in Wisconsin, and it would be equally burdened by having to litigate this case far from home. "Wisconsin has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state." *Id*. So the first two factors don't cut against the exercise of specific jurisdiction in this case.

Antitrend also contends that the parties could more easily and efficiently litigate this case in its home state of Massachusetts. It notes that it currently has two cases against Standard Process pending in Massachusetts federal court, both of which it filed shortly after Standard Process filed this case. *See Earle v. Standard Process*, No. 19-cv-10613-RWZ (D. Mass. filed Apr. 1, 2019) (seeking declaratory judgment that resale of Standard Process's products does not violate the law); *Earle v. Standard Process*, No. 19-cv-10952-RWZ (D. Mass. removed Apr. 24, 2019) (asserting Massachusetts state-law claims for unfair competition and deceptive trade practices).[2] Antitrend says that Standard Process could obtain the same relief in Massachusetts, and that the interstate judicial system's interest in the efficient resolution of controversies would be served by litigating the case in Massachusetts "because dozens of papers (exceeding 1000 pages) have already been filed in the District of Massachusetts." Dkt. 8, at 14. But Standard Process is the "natural" plaintiff in this case; its claims seek coercive relief, which ordinarily take priority over mirror-image claims for declaratory relief like the one Antitrend asserts in the first of its two later-filed suits. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). Permitting Antitrend to wrest the choice of forum from

---

[2] Standard Process has moved to consolidate the two cases and transfer them to this district. Those motions remain pending before the Massachusetts district court.

Standard Process in this manner would burden Standard Process and undermine the integrity of the interstate judicial system. So the third and fourth factors don't cut against the exercise of specific jurisdiction either.

Finally, Antitrend contends that the shared interest of the several states in furthering fundamental substantive social policies weighs against exercising specific jurisdiction because "the several States have a shared interest in not imposing universal jurisdiction on those people who engage in E-Commerce." Dkt. 8, at 14. As explained above, the court is not imposing universal jurisdiction over e-commerce vendors by concluding that it has specific jurisdiction over Antitrend in this case. Antitrend has purposely directed its conduct at Wisconsin, so it can expect to be haled into court here. Antitrend's motion to dismiss for lack of personal jurisdiction is denied.

**B. Arbitration clause**

As a separate basis for dismissal, Antitrend asserts that Standard Process is subject to binding arbitration under Amazon's arbitration clause, which requires all Amazon users to agree that "[a]ny dispute or claim relating in any way to [their] use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration rather than in a court." *See* Dkt. 9-7, at 3 (Amazon's conditions-of-use). Its argument on this point is difficult to follow, and Antitrend does not raise the argument its reply brief, which suggests that it may have abandoned the issue. The argument fails regardless.

By its own terms, Amazon's arbitration agreement applies only to claims against Amazon. *See id.* at 4 ("To begin an arbitration proceeding, you must send a letter . . . to [*Amazon's*] registered agent . . . . *Amazon* will not seek attorneys' fees and costs in arbitration

13

unless the arbitrator determines that the claims are frivolous." (emphasis added)). The agreement does not purport to give rights enforceable by or against third parties who are litigating disputes that simply happen to involve Amazon in some way. Antitrend says that the arbitration agreement nonetheless bars litigation of Standard Process's claims because by suing Antitrend, Standard Process is invoking the benefits of its participation in the Amazon Brand Registry. The Amazon Brand Registry is "an online command center where brand owners can search for and report violations of intellectual property rights and address other brand-related issues." Matthew J. Clark, *Leveeing a Flood of Counterfeits on Amazon*, 11 Landslide 44, 47 (2019). Brand owners who participate in the Brand Registry must agree to its terms-of-use, which incorporate the arbitration provision from Amazon's general conditions-of-use. *See* Dkt. 9-8, at 2. But again, that agreement applies only to disputes with Amazon.

There are circumstances under which an arbitration agreement can be enforced by or against nonparties. *See* 21 Williston on Contracts § 57:19 (4th ed. 2000) (under traditional contract and agency law principles, arbitration agreements may be enforced by or against nonsignatories under one of six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third party beneficiary). Antitrend doesn't identify which theory might support its enforcement of an Amazon arbitration agreement against Standard Process. It simply says that Standard Process's claims are subject to arbitration because Standard Process seeks to enjoin Antitrend "using the benefits of the Brand Registry agreement" and because Standard Process's claims are "inextricably intertwined with www.amazon.com and Amazon services." Dkt. 8, at 16.

These statements suggest that Antitrend is relying on an equitable estoppel theory. The doctrine of equitable estoppel allows a nonsignatory to an arbitration clause to compel

14

arbitration "where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory," or "where the signatory to the written agreement raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Williston, *supra*, § 57:19. Neither circumstance is present here. Standard Process's claims have nothing to do with any agreement it has with Amazon through Amazon's Brand Registry; its claims arise under the Lanham Act and state law. Antitrend's motion to dismiss for improper venue under Rule 12(b)(3) is denied.

**C. Transfer of venue**

Antitrend asks in the alternative that the court transfer this case to the District of Massachusetts under 28 U.S.C. § 1404(a). That statute provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Section 1404(a) gives district courts discretion to conduct a case-by-case consideration of convenience and fairness. *Research Automation*, 626 F.3d at 977. The burden is on Antitrend, as the party seeking transfer, to show that transfer is warranted. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). It has not done so here.

Antitrend raises three grounds that it says support transfer under § 1404. First, it says that transfer would conserve judicial resources by mooting the jurisdictional question. Courts will sometimes transfer cases "where there is a significant chance that personal jurisdiction is lacking." *Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc.*, No. 05-C-104-S, 2005 WL 1181952, at *4 (W.D. Wis. May 18, 2005). But as set forth above, the court is satisfied that

Antitrend is subject to specific personal jurisdiction in Wisconsin, so those concerns aren't present here.

Second, Antitrend contends that transfer would serve judicial economy by permitting consolidation with the cases currently pending in Massachusetts. But Standard Process filed this case first, which in this instance weighs in favor of keeping the case here. *See Research Automation*, 626 F.3d at 980 (generally "the first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise"). Antitrend's Massachusetts cases duplicate the claims at issue here; indeed, its declaratory judgment action is a mirror-image of this case. Where parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief, courts "ordinarily give priority to the coercive action." *Id.*

Third, Antitrend says that transferring this matter to Massachusetts would "ensure a forum where all evidence is accessible, including an inspection of Antitrend's warehouse" in Rockland, Massachusetts. Dkt. 8, at 18. Antitrend doesn't explain why an inspection of its warehouse would be necessary, or why traditional modes of evidence like photographs, videos, or lay and expert testimony wouldn't be adequate to convey relevant facts about the warehouse.

The court is not persuaded that fairness or convenience considerations would be served by transferring this case to Massachusetts, so Antitrend's motion is denied.

ORDER

IT IS ORDERED that motion to dismiss filed by defendants the Antitrend LLC and Daniel Earl, Dkt. 7, is DENIED.

Entered February 4, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge